STATE EX REL. CRAIGHEAD COUNTY *v.* ST. LOUIS-
SAN FRANCISCO RAILWAY COMPANY.

Opinion delivered February 11, 1924.

1.  COURTS—STARE DECISIS.—Federal district courts are bound by decisions in other cases of the Circuit Court of Appeals for the circuit construing the State Constitution, though in conflict with subsequent decisions of the highest court of the State.

2.  JUDGMENT—RES JUDICATA—ERRONEOUS JUDGMENT.—While the State Supreme Court is the final arbiter in construing the State Constitution and statutes, and a conflicting decision of a Federal court does not constitute a precedent for the State court, the

Federal court's judgment in a given proceeding constitutes a final adjudication of the subject-matter and is binding on the State courts, under the full faith and credit clause of the Federal Constitution.

3. JUDGMENT—RES JUDICATA—CONCLUSIVENESS.—A judgment of a Federal district court in a case within its jurisdiction, commanding the assessing officers of a county to assess property at its full valuation in order to pay a judgment rendered by such court against the county, is not void, though in conflict with the decision of the court of last resort in the State in the construction of the Constitution and laws of this State.

4. COURTS—UNITED STATES SUPREME COURT—CONCLUSIVENESS OF DECISIONS.—Decisions of the United States Supreme Court concerning the jurisdiction of Federal courts are conclusive on courts of the State.

5. JUDGMENT—FEDERAL JUDGMENT IN STATE COURT.—When the effect of the judgment of a Federal court is questioned in subsequent litigation in a State court having jurisdiction of the subject-matter and parties, the State court may determine for itself the scope and extent of that judgment, though that is a Federal question reviewable by the Supreme Court of the United States.

6. TAXATION—ASSESSMENT OF PROPERTY.—A judgment of the Federal court directing an assessment of all property in a county at its full valuation contemplates an assessment for all purposes, and an assessment of property at its full valuation for county purposes only is invalid.

7. JUDGMENT—RES JUDICATA—REPRESENTATION OF TAXPAYERS.—Taxpayers are bound by an assessment in accordance with the judgment of a court having jurisdiction in an action against the assessing officers, by whom they are represented in a matter in which they are necessarily interested, but are not bound by an assessment not authorized by such judgment or by the State laws.

8. TAXATION—ILLEGAL ASSESSMENT.—Taxpayers are not bound by an illegal assessment, though the effect is merely to relieve them from part of the assessment which otherwise would be imposed.

9. TAXATION—OVERDUE TAX ACT.—Crawford & Moses' Dig., § 10204 *et seq.*, authorizing suits against corporations for the collection of overdue taxes, empowers the courts of equity to adjudicate and enforce the collection of delinquent taxes which are authorized by the laws of the State.

10. TAXATION—SUFFICIENCY OF PLEA OF TENDER.—Where corporations, sued for delinquent taxes, pleaded tender of the proper amount due, which was refused, the court did not err in refusing to adjudge a penalty, interest and costs against defendants

because of their failure to make their tender good; such plea being in effect a continuing offer to pay.

Appeal from Craighead Chancery Court, Western District; *J. M. Futrell,* Chancellor; affirmed.

*J. S. Utley,* Attorney General, and *A. P. Patton* and *Horace Sloan,* for Craighead County.

Diversity of citizenship gives the Federal court jurisdiction to determine questions of State law. 42 Sup. Ct. Rep. 375; 213 U. S. 175; 29 Sup. Ct. Rep. 451; 53 L. ed. 753; 231 U. S. 294; 34 Sup. Ct. Rep. 48; 68 L. ed. 229; 43 Sup. Ct. Rep. 192; 43 Sup. Ct. Rep. 51. "Full faith and credit" due to a Federal court judgment constitutes a Federal question. 169 U. S. 465; 18 Sup. Ct. Rep. 415; 42 L. ed. 819; 120 U. S. 141; 7 S. Ct. 472; 191 U. S. 499; 24 S. Ct. 154; 48 L. ed. 276; 184 U. S. 497; 146 U. S. 657; 36 L. ed. 1123; 6 Wall. 166, 18 L. ed. 768; 7 How. 72; 237 U. S. 477; 153 U. S. 671; 107 U. S. 3; 27 L. ed. 346. Taxpayers are bound by an award of mandamus against officers of taxing district. 133 N. Y. 187, 30 N. E. 965, 31 N. E. 334, 23 Am. St. 619; 2 Van Fleet, Former Adjudication, p. 1153. A judgment at law must first be obtained before mandamus to enforce collection will issue. 106 U. S. 663; 102 U. S. 187; 105 U. S. 237; 129 U. S. 44. Mandamus, after judgment, is a substitute for the ordinary process of execution. 9 Wall. 415; 6 Wall. 166; 122 U. S. 306; 6 Wall. 210; 132 U. S. 210; 102 U. S. 472; 24 Hw. 376; 34 Ark. 291; 48 Ark. 331; 96 Ark. 465. Neither a State nor a Federal court can enjoin proceedings in the other. 61 W. Va. 183; 11 Ann. Cas. 741; 9 Wall. 409; 188 U. S. 537; 172 U. S. 148; 4 Dill. 224. A judgment of a Federal court cannot be assailed collaterally in a State court. 17 S. W. 502; 109 U. S. 162; 62 Calif. 40. The Federal court had jurisdiction to require the assessing officers to make a full value assessment. 222 Fed. 489; 239 U. S. 641. *Contra,* see 127 Ark. 349; 129 Ark. 41; 130 Ark. 259. In such case, the Federal courts may determine for themselves what the State law is. 263

Fed. 856; 107 U. S. 20; 215 U. S. 349; 275 Fed. 747; 119
U. S. 680; 120 U. S. 759; 190 U. S. 437; 193 U. S. 532;
215 U. S. 349. But, as to contracts made after a State
court's decision, the Federal court will follow the State
court. 18 Wall. 71; 101 U. S. 677. However, the court's
decision must be on the precise point involved. 131 Fed.
705; 134 Fed. 423; 130 Fed. 251; 123 Fed. 480; 85 Fed.
180. Where a State court has decided a Federal ques-
tion, its decision, though erroneous, is binding on collat-
eral attack. 51 Fed. 858; 53 Fed. 411; 202 Fed. 82. A
State court cannot challenge the jurisdiction of a Federal
court to render a particular judgment. 67 Ark. 469; 213
U. S. 207; 152 U. S. 327; 198 U. S. 188; 151 Ky. 185, 151
S. W. 404; 63 S. C. 542, 41 S. E. 761. Where a court
has jurisdiction, its judgment is binding until reversed
in a proper proceeding. 7 How. 612; 107 Fed. 305; 199
Pac. 696. Though a State court's decision of a Federal
question is erroneous, the Federal courts will not annul
it on collateral attack. 132 U. S. 210; 20 Wash. 396; 72
Am. St. 110; 109 Tenn. 315; 70 S. W. 1031; 10 N. M. 416;
62 Pac. 987; 5 S. D. 539; 59 N. W. 833; 26 L. R. A. 493;
104 Fed. 113; 43 C. C. A. 429; 79 Fed. 567; 25 C. C. A.
87; 80 Fed. 686; 25 C. C. A. 469; 97 Fed. 435; 38 C. C. A.
250; 85 Fed. 189; 29 C. C. A. 106; 28 Fed. 407; 106 Fed.
459; 45 C. C. A. 429; 55 Ark. 398; 22 Ark. 550; 75 Ark.
415; 68 Ark. 83; 64 S. C. 374; 42 S. E. 180; 14 Wis. 180;
134 N. Y. 461; 31 N. E. 987; 30 Am. St. 685; 37 N. Y.
511; 43 N. Y. 184; 105 Ark. 450. A Federal court may
compel an assessment on a full valuation for the pay-
ment of indebtedness. 97 U. S. 300; 99 U. S. 152. The
assessment conformed to the order of the Federal court.
*Hays* v. *Missouri Pac. Rd. Co.,* 159 Ark. 101; 62 Ark. 461;
92 Ark. 492; 127 Ark. 349. It is not necessary that the
assessment for all purposes should be doubled. 57 Ark.
509.

*Thomas B. Pryor* and *Gordon Frierson,* for Missouri
Pac. Rd. Co., and *W. F. Evans* and *W. J. Orr,* for St.
Louis-San Francisco Ry. Co.; *Gautney & Dudley* and *E.
L. Westbrooke,* of counsel.

The assessment was not made as the writ of mandamus commanded.   62 Ark. 461; 92 Ark. 492; 124 Ark. 569; 127 Ark. 349; 129 Ark. 41; 250 S. W. 879; 244 U. S. 499; 101 U. S. 153; 209 Fed. 380; 270 Fed. 369; 283 Fed. 318; 28 Atl. 523; 51 N. H. 455; 58 N. H. 38; 44 Ill. 229; 54 Kan. 781; 274 Fed. 630; 157 N. W. 731; 74 Atl. 67; 112 N. E. 700; 85 Fed. 302; 258 Fed. 458; 222 Fed. 568; 199 Fed. 237.   Mandamus will not issue to compel the performance of an act not required by law.   127 Ark. 349; 77 Fed. 567; 23 C. C. A. 236; 95 U. S. 769; 99 U. S. 591; 155 U. S. 1; 30 Ark. 450; 46 Ark. 312; 47 Ark. 80; 104 Ark. 590.   A writ which commands officers to violate the Constitution is void.   104 U. S. 604.   This court is the final arbiter in the construction of the Constitution and laws of this State.   127 Ark. 349; 44 Sup. Ct. Rep. 40; *Id.* 50; *Id.* 62; 258 Fed. 458; 244 U. S. 499.

McCULLOCH, C. J.   There are two consolidated actions involved in this appeal, one against the defendant, St. Louis-San Francisco Railway Company, and the other against the Missouri Pacific Railroad Company, each instituted in the chancery court of Craighead County by the Attorney General, in the name of the State of Arkansas, for the use and benefit of Craighead County, to recover delinquent county taxes due for the years 1921 and 1922.

It is alleged in the complaint that all property in Craighead County was assessed, for all purposes other than for county taxation, at fifty per centum of its actual value, so as to conform to the rate of assessment in other counties, but that there was a separate assessment for county purposes at one hundred per centum valuation, and that this was done under the requirement of a mandamus issued by the United States District Court, in a suit instituted by a creditor of the county to recover on past due indebtedness.   It was also alleged that said defendants in each case had paid the taxes extended against its respective property for all purposes other than county taxation, but had each refused to pay the county taxes as extended, and had tendered the amount

of taxes due on a fifty per centum valuation.  Each of
the defendants, in its answer, challenged the validity
of the assessment, on the ground that it was contrary
to the laws of this State as interpreted by the court of
last resort, and also denied that there had been any
assessment of real property by the Tax Commission at a
valuation of one hundred per centum.

The facts in the case are undisputed.  On February
17, 1921, the United States District Court for the West-
ern Division of the Eastern District of Arkansas, in an
action in which an incorporated fraternal association,
named the Maccabees, was plaintiff, and Craighead
County was defendant, rendered a judgment in favor
of said plaintiff and against said defendant for recovery
of the sum of $77,680; and on March 2, 1921, said court,
in an action instituted by said plaintiff, the Maccabees,
against the assessing officers and clerk of Craighead
County, and the members of the State Tax Commission,
to compel said officers to assess the taxes to pay said
judgment against the county, entered a judgment direct-
ing that a mandamus issue against the assessing officers
and the State Tax Commission, requiring an assessment
of property for taxes at full valuation.  The particular
language of this judgment was that "a mandamus issue
requiring the defendant to assess, at its full value in
money, all property in Craighead County, and to con-
tinue said assessment at its full value in money until the
judgment of the plaintiff herein for $77,680 and costs
shall have been paid in full."

It does not appear, from the record in this case, that
the Tax Commission made any change in its assessment
of railroad property for the year 1921, but let its assess-
ment stand, as made throughout the State on railroad
property, at a valuation of fifty per centum.  The
assessor of Craighead County, however, assessed all
property in Craighead County at fifty per centum for all
purposes other than county taxes, and made a separate
assessment for county purposes at one hundred per

centum of the valuation, using an extra column on the assessment books for such separate assessment.

In the year 1922 the State Tax Commission, in compliance with the said mandamus issued by the United States District Court, adopted a resolution applicable to the taxable property of Craighead County, commanding the assessor of Craighead County to "double the amount of the assessment as shown by the certificates of this Commission, for the purpose of extending thereon the general county tax rate for Craighead County, Arkansas, and that he show in a separate column said fifty per centum assessment for the purpose of extending State, three-mill county road tax, school district tax and municipal corporation tax thereon." In each of the years the taxes were extended on the books for county purposes on the basis of one hundred per centum valuation, but for all other purposes on the basis of fifty per centum valuation. Each of the defendants in these actions paid the taxes for all other purposes, but refused to pay the taxes extended against its property for county purposes, and tendered the amount due on an extension based on a valuation of fifty per centum. The tender was refused, and this action was instituted to compel the payment.

The chancellor held that the assessment at full valuation for county purposes was void, and rendered a decree for the recovery by plaintiff of the amount of taxes tendered by each of the defendants; that is to say, the amount of taxes on a basis of fifty per centum valuation.

We are unable to agree with the learned chancellor in his view that the judgment of the United States District Court is void because it attempts to impose on the assessing officers a requirement contrary to the Constitution of the State, as interpreted by this court. It is true that the judgment of the court was not in accord with the Constitution, as interpreted by this court, with respect to the requirement of uniformity throughout the State in the assessment of property. *State* v.

*Meek,* 127 Ark. 349. In that case we held that there must be uniform valuation of property for taxation purposes throughout the State, and that the tax assessor of a given county could not be compelled by mandamus to assess property in his county at full valuation, so as to put the assessment out of conformity with other assessments in the State, as directed by the State Tax Commission. The decisions of the United States Circuit Court of Appeals for the Eighth Circuit are in conflict with the decision of this court on that subject (*United States* v. *Jimmerson,* 222 Fed. 489), and the district courts in this circuit are therefore bound by those decisions. *United States* v. *Cargill,* 263 Fed. 856. The court of last resort of the State is, of course, the final arbiter in the interpretation and construction of the Constitution and statutes of the State. A conflicting decision of the Federal court does not constitute a precedent to be followed by the State court, but the judgment itself in a given proceeding constitutes a final adjudication of the subject-matter of the litigation so as to bind the State courts, under the provision of the Constitution and statutes of the United States requiring full faith and credit to be given to the judgment of the Federal courts. That is to say, the Federal court has jurisdiction of the subject-matter to adjudicate the rights of the parties to the action and their privies. Any judgment rendered thereon will be binding on the State courts, even though the decision is found to be in conflict with the decision of the court of last resort of the State in the interpretation of the Constitution and laws of the State. There is just that distinction between the doctrine of *res judicata* and the doctrine of *stare decisis.* The Federal courts exercise an independent judgment in the construction of the Constitution and statutes of the State in which the cause of action arises, and they usually follow the interpretation adopted by the court of last resort in the State, but any error in that respect must be corrected by appeal, and does not render the judgment void. There are many announcements of this rule by

the Supreme Court of the United States, and the cases
are so numerous that it is scarcely necessary to cite
them.    They are collected in the briefs of counsel in the
case.    As a late announcement on this subject, reference
is made to the comparatively recent case of *Kuhn* v.
*Fairmont Coal Co.,* 215 U. S. 349, and the still later case
of *Cumberland Glass Mfg. Co.* v. *DeWitt,* 237 U. S. 447.
In the application of this rule, it follows that the United
States District Court, in the litigation between the Macca-
bees and Craighead County, involving the right to
recover for debt and to enforce the judgment, had
jurisdiction to compel the assessing officers to make
an assessment of property for the purpose of raising
funds to pay the judgment, and its decision in the inter-
pretation of our Constitution with respect to the limita-
tion upon the taxing power, though in conflict with the
interpretation given by this court, was not void, for the
reason that the jurisdiction of the court, based on the
diversity of citizenship of the parties, in the decision of
the rights of the parties to that action, drew to that court
the jurisdiction to interpret the laws under which the
cause of action, if any existed, arose.    *Riggs* v. *Johnson,*
6 Wall. 195; *Proutt* v. *Starr,* 188 U. S. 537.    There are
decisions of this court holding that, even though a Fed-
eral court errs in its adjudication with respect to the
taxing power of this State, the judgment of that court
is binding upon the State court as to rights adjudicated
in that particular action, even though in conflict with
decisions of this court in the interpretation of the
Constitution and laws of the State.    *Vance* v. *Little
Rock,* 30 Ark. 435; *Graham* v. *Parham,* 32 Ark. 676;
*Gaines* v. *Springer,* 46 Ark. 502; *Garland County* v. *Hot
Spring County,* 68 Ark. 83.

The decisions of the Supreme Court of the United
States concerning the jurisdiction of Federal courts are
conclusive upon the State courts, and that court has
decided that it is within the jurisdiction of the Federal
court to compel the assessing officers of a State to levy
the full limit of taxes allowed by the laws of the State

for the purpose of enforcing its judgment. *Memphis* v. *Brown,* 97 U. S. 300; *United States* v. *Ft. Scott,* 99 U. S. 152.

Counsel for the defendants rely on the decision of the Supreme Court of the United States in *Ex parte Rowland,* 104 U. S. 604, but that case has no application for the reason that it involved a mandamus against officers of a county who had no authority under the laws of the State to assess or levy taxes.

When the effect of the judgment of the Federal court is called in question in subsequent litigation in a State court in which the latter has jurisdiction of the subject-matter and of the parties, the State court may determine for itself the scope and extent of that judgment, though that is a Federal question, which may be reviewed by the Supreme Court of the United States, on proper application, by writ of error or certiorari. An error of the State court in a decision as to the effect of the Federal court judgment would have to be corrected in that way. It is therefore proper for us to consider, at this point of the controversy, what is the effect of the judgment of the Federal court, and this must be determined from an examination of the face of the record in the case in which the judgment was rendered.

The judgment directed that the assessing officers of the county "assess at its full value, in money, all property in Craighead County." This does not specify the mode of assessment, and that is left to the operation of the State laws as construed by this court. It does not direct that the assessment shall extend only to county taxation, but it applies to the whole assessment. This court has decided, in a recent case, that, under the Constitution of this State, there can only be one assessment of property for all purposes of taxation—State, county, municipal and school. *Hays* v. *Missouri Pac. Rd. Co.,* 159 Ark. 101. The effect of the judgment of the Federal court therefore was to compel the assessing officers to assess all the property in the county at full valuation, in the mode provided by the laws of the State; that is

to say, by a single valuation for all taxation purposes. It must be noted, then, that the valuation made by the assessing officers did not conform to the judgment of the Federal court in assessing at a full valuation, nor in conformity with the laws of the State, as declared by this court, in making such an assessment as would be in uniformity with the assessments of property in other counties.  The assessing officers followed neither direction, but made two separate valuations for taxation purposes, which was, according to our decision in the Hays case, *supra,* unauthorized by law.  Are the taxpayers bound by such an assessment?  They are bound by an assessment made in accordance with the adjudication of a court having jurisdiction, in an action against the assessing officers, for the reason that they are held to be privies to the action, as being represented by the assessing officers in a matter in which the taxpayers are necessarily interested.  *Ashton* v. *Rochester,* 133 N. Y. 187, 105 Am. St. Rep. (note) 213; 2 Vanfleet on Former Adjudication, 1153.  They are not bound by an assessment not authorized either by the judgment of the court or by the laws of the State.  The assessing officers may be held to be in contempt of court for failure to make the assessment in accordance with the judgment of the court, but the taxpayers cannot be held to compliance with the judgment unless the assessment be made in accordance therewith; they are only bound by an assessment made in accordance with the judgment.  The taxpayers cannot be held to pay until there has been a valid assessment of taxes in accordance with law, or unless there is other statutory authority for collecting the tax without a previous valid assessment.  It is contended by counsel for plaintiff that, if it be conceded that the assessment was not made in accordance with the direction of the Federal court judgment, the effect was merely to relieve the taxpayers from a portion of the tax which would have been imposed by a full valuation assessment by omitting the full valuation from the taxes for State, municipal and school purposes, and that they cannot complain of this

reduction. Counsel rely on the decision of this court in the recent case of *Summers* v. *Brown,* 157 Ark. 509. That decision does not, however, have the application here that counsel contend for. In that case there had been a valid assessment for all purposes, and the clerk, following the erroneous direction of the equalization board and the county court, reduced the taxes to one-half of the amount originally assessed. We held that the reduction was void, but that the taxpayer could not complain and escape payment of the amount of taxes extended against his property. In the present case there has been no valid assessment, either under the direction of the Federal court judgment or the laws of the State; therefore the taxpayers are not bound by the illegal assessment.

It is further contended by counsel for the plaintiff that these actions were brought under the statute (Crawford & Moses' Digest, § 10204 *et seq.*) authorizing suits in equity to be brought against corporations for the collection of overdue taxes, and that there should be a recovery in accordance with the valuation directed by the Federal court judgment, even though it be found that the assessment was not in accordance with the judgment. The courts of the State are not bound to that extent by the judgments of the Federal court. Under the statute referred to, the courts are authorized and empowered to adjudicate and enforce collection of delinquent taxes which are authorized by the laws of the State—not those merely directed by the judgment of another court.

Each of the defendants in these cases has offered to pay, at the outset, the amount due upon its property in accordance with the Constitution and laws of this State, and they cannot be compelled, under the statute referred to above, to pay more than that merely because there has been an adjudication of another court. The chancery court awarded the plaintiff a decree against each of the defendants for those amounts.

Courts of equity, under the statute referred to, are authorized to enforce only the taxation laws of this State

as interpreted by the Supreme Court of this State. The Federal court did not determine the amount that each taxpayer was to pay, but adjudged that there should be an assessment by the assessing officers at a full valuation, and, as before stated, this was not done.

Finally, it is contended that the court erred in refusing to adjudge a penalty, interest and costs on the defendants on account of their failure to make their tender good, but that contention is not sound, for the reason that the tender was refused. Each of the defendants pleaded a tender of the proper amount, which was, in effect, a continuing offer to pay that amount.

Before closing the discussion, reference should be made to the fact that the State Tax Commission did not, in fact, change its assessment of railroad property for the year 1921 and raise it to a full-value assessment. There was correspondence between the assessor and the secretary of the Tax Commission, in which the latter expressed his individual opinion as to what the assessor should do, but there does not appear in the record any order of the Tax Commission raising the assessment on railroad property to full valuation. This affords additional reason why there can be no recovery of taxes for the year 1921 on a full-valuation basis. It is unimportant, however, since we hold, for the reasons hereinbefore stated, that there can be no recovery for the taxes for either year on a full-valuation basis.

The decree is therefore affirmed.

HART, J., (dissenting). Judge HUMPHREYS and myself think that the opinion of the chancellor, that the judgment of the Federal court awarding the writ of mandamus was void, is correct, and for that reason the decree of the chancery court should be affirmed.

The full faith and credit clause of the Constitution of the United States was intended to give conclusive effect to judgments of all the States, so as to promote uniformity as well as certainty in the rule among them. 2 Story on the Constitution, 5 ed., § 1307.

The opinion of the majority tends to place assessing officers between two fires by subjecting them to contradictory orders, and impedes rather than promotes uniformity and certainty in judgments of courts sitting in the same State. The only excuse for levying and collecting the taxes in question is for the support of the State and county governments.

The confusion which might result from the majority opinion is calculated to interfere with the administration of the government of the State. To illustrate: The writ of mandamus was awarded in the Federal court on a judgment by default in favor of the holders of county warrants against the assessing officers. This might or might not have been the result of an agreement between the parties to the suit. Suppose a similar suit had been filed in the State court by the holders of other county warrants, and, upon the intervention of taxpayers, the case had been transferred to equity, and a decree obtained enjoining the assessing officers from making any such assessment. Then the order awarding the writ of mandamus in the Federal court would command the assessor to do the very thing which, by the injunction, he was forbidden to do. He would be guilty of contempt of court in failing to obey the order of whichever court he failed to obey. Thus we would have two courts sitting in the same State, deciding the same rights, arising in the same way, under the same provision of the Constitution, with directly opposite results. This court has already construed the clause of our Constitution in question directly opposite to the construction placed upon it by the Federal Court of Appeals, which was followed by the Federal District Court in awarding the writ of mandamus.

It is not pretended that the construction we have placed upon the sections of our Constitution is in conflict with the Constitution of the United States. It is well settled that to the highest court of a State belongs the right to construe its own statutes and Constitution, except

where they may conflict with the Constitution of the United States.  Nor is it denied that, where such a construction has been given by a State court, the Supreme Court of the United States is bound to follow it.

The power to assess property for State and county purposes is derived solely from the Constitution and statutes of a State; and the authority is limited or restricted by the construction of the State Supreme Court of its own Constitution and statutes.

If the Federal courts can, under proper circumstances, issue their writs of mandamus for the purpose of compelling the assessor to assess property, it is evident that the State courts have as full and complete jurisdiction in the matter as the Federal courts possess. Suppose that a State court had issued its injunction, after due course of legal proceedings begun by holders of county warrants, and that the Federal court had issued its writ of mandamus at the instance of the holders of other warrants, the principle that, in cases of concurrent jurisdiction between State and Federal courts, the court which first acquires jurisdiction shall have the exclusive right to decide the matter in issue, could not apply. The reason is that, although the defendants in the two suits are the same, the plaintiffs would be different persons, seeking to enforce distinct and separate rights. They could in no sense be said to be in privity with each other because each of them was the holder of warrants of the same county.

Therefore we believe that the Federal court had no jurisdiction to issue a writ of mandamus to compel the assessing officers to assess property in defiance of a construction of this court of the Constitution and statute, under which alone they had power to act.